273 So.2d 774 (1973)
Louis E. WOLFSON, Appellant,
v.
Claude R. KIRK, Appellee.
No. 71-962.
District Court of Appeal of Florida, Fourth District.
February 28, 1973.
*776 William H. Maness, Jacksonville, for appellant.
Joseph D. Farish, Jr. of Farish & Farish, West Palm Beach, and Ray C. Osborne, Boca Raton, for appellee.
REED, Chief Judge.
This is an appeal from a final judgment consequent on an order of the Circuit Court for Palm Beach County, Florida, which granted defendant's motion to dismiss plaintiff's amended complaint on the ground that the same failed to state a cause of action. The issue before us is whether or not the amended complaint states a cause of action for slander per se.
The amended complaint was filed in the Circuit Court on 8 July 1971. It establishes the facts for purposes of passing on the motion to dismiss. The complaint states in its introductory clause that the plaintiff, Louis E. Wolfson, is referred to in the body of the complaint as "Wolfson". The complaint then avers that Wolfson is a financier, businessman and business consultant, and that Hayden Stone, Inc., is a stock brokerage house which for its customers buys and sells securities on the New York and other stock exchanges. It is then averred that the defendant while Governor of the State of Florida, on October 11, 1970, eleven days before an election in which the defendant was running for reelection, spoke in Niceville, Florida, before an audience which included political reporters and a television crew. In the course of this speech, the defendant allegedly stated that he knew the plaintiff and said, "When I was running Hayden Stone, we invited him (Wolfson) out of the office." The complaint further alleges that the statement was not true and, "... imputes to Wolfson conduct, characteristics, or a condition incompatible with the proper exercise of his lawful business, trade, profession or office ...". The complaint further alleged that the statement was intended to defame the plaintiff and was deliberately contrived for defendant's political benefit.
The motion to dismiss asserts that the complaint (a) fails to state a cause of action for slander per se or per quod; (b) omits allegations as to plaintiff's business, occupation and/or reputation at the time the alleged cause of action occurred, and (c) fails to state facts sufficient to identify the plaintiff as the subject of the alleged defamation. We hold that the complaint states a cause of action and that the motion to dismiss should have been denied.
Defamation (libel and slander) may generally be defined as the unprivileged publication of false statements which naturally and proximately result in injury to another. Cooper v. Miami Herald Pub. Co., 1947, 159 Fla. 296, 299-300, 31 So.2d 382, 384; Delacruz v. Peninsula State Bank, Fla.App. 1969, 221 So.2d 772, 775. Malice is an essential element of the tort. In Layne v. Tribune Co., 1933, 108 Fla. 177, 146 So. 234, 238, the court said, "... Without malice, either express or implied by law, no tort could result from the publication of a defamatory statement concerning another, however untrue it might be."
The law at an early time recognized a distinction between defamations "per se" and defamations "per quod". The reason underlying the distinction is that some statements are so obviously defamatory, that is damaging to reputation, that the mere publication of them gives rise to an absolute presumption both of malice and damage. See Layne v. Tribune Co., supra.
*777 Apparently some of the early authorities dealing with the law of defamation, developed the notion that slander would be actionable per se only where the words imputed a crime whereas written defamation, i.e., libel, would be actionable per se where the words covered a greater spectrum of defamatory meanings. See Commander v. Pedersen, 1934, 116 Fla. 148, 154, 156 So. 337, 339. Obviously the reason for limiting slander per se in this fashion, if ever sound, has lost its rational basis in view of the facilities available today for the widespread dissemination of oral communication. Hence it was recognized in Sharp v. Bussey, 1939, 137 Fla. 96, 187 So. 779, that oral communications could be actionable per se where the publication was false and not privileged and was such that, "its natural and proximate consequences necessarily caused injury to the plaintiff in his social, official and business relations of life." (Emphasis added.) That general principle was given more specificity in the case of Campbell v. Jacksonville Kennel Club, Fla. 1953, 66 So.2d 495, 497, where the Florida Supreme Court in a slander case stated:
"It is established in most jurisdictions that an oral communication is actionable per se  that is, without a showing of special damage  if it imputes to another (a) a criminal offense amounting to a felony, or (b) a presently existing venereal or other loathsome and communicable disease, or (c) conduct, characteristics or a condition incompatible with the proper exercise of his lawful business, trade, profession or office, or (d) the other being a woman, acts of unchastity." (Emphasis added.)
In the later case of Teare v. Local Union No. 295, Fla. 1957, 98 So.2d 79, 82, the court in another slander case noted that the categories of slander per se adopted in Campbell v. Jacksonville Kennel Club, supra, constituted an expansion in the law of slander.
The significance of the classification of a communication as actionable per se lies in the fact that its victim need not plead or prove malice (except where a privilege is involved) or special damage because malice and the occurrence of damage are both presumed from the nature of the defamation, Sharp v. Bussey, supra; Johnson v. Finance Acceptance Co. of Georgia, 1935, 118 Fla. 397, 159 So. 364. Such a presumption is not an ordinary presumption of fact, but is a presumption of law and is not, therefore, dispelled by the production of evidence. Communications which are not actionable per se may be actionable upon adequate averments of actual damage and express malice. See Layne v. Tribune Co., supra, wherein the court noted that words which are not so obviously harmful that they may be presumed by courts to be damaging and uttered with malice, must be shown by pleading and proof to have been damaging and communicated with malice.
In Adams v. News-Journal Corporation, Fla. 1955, 84 So.2d 549, 551, the court noted that the task of testing the effect of the language used is not an easy one because there is no fixed rule that guides to a conclusion. The court reiterated the rule which has been stated in any number of cases:
"... The language used will be given neither a mild nor harsh construction but the words will be construed `in that sense in which they may be understood and in which they appear to have been used and according to the ideas which they were adopted to convey to those who hear them, or to whom they are addressed' ...".
Together with the foregoing, the cases also apply the so-called common mind rule which holds that the words used will be construed as the "common mind" would naturally have understood them. See Diplomat Electric, Inc. v. Westinghouse Electric Supply Co., 5th Cir.1967, 378 F.2d 377, Adams v. News-Journal Corporation, Fla. 1955, 84 So.2d 549, Walsh v. Miami Herald Publishing Co., Fla. 1955, 80 So.2d 669, Richard v. Gray, Fla. 1953, 62 So.2d 597, *778 McCormick v. Miami Herald Publishing Co., Fla.App. 1962, 139 So.2d 197, 200. The so-called "common mind" rule simply means that the words should be given a reasonable construction in view of the thought intended to be conveyed and that which would be a reasonable construction of the language by those who heard same.
In construing the language used in a slander, the court is not limited to the words themselves, but may consider extrinsic facts and circumstances to the extent that they might reasonably give meaning to the language used. In Campbell v. Jacksonville Kennel Club, 66 So.2d at page 498 the court said:
"If, then, the effect of the decision of this court in Commander v. Pedersen, 116 Fla. 148, 156 So. 337, is as contended by appellee  that is, that `words that are not on their face defamatory per se cannot be aided by innuendos and extrinsic facts and circumstances, so as to make them defamatory or slanderous per se'  then we hereby recede from that portion of our opinion in Commander v. Pedersen, supra; and we hold that even though the full impact of an alleged defamatory communication must be shown by allegations of inducement, colloquium and innuendo, it is nonetheless actionable per se, without the necessity of showing special damage, if the defamation falls within any of the classifications above noted."
To this extent, the construction of a slanderous statement is somewhat different from the construction of a libel. The Florida cases have held that written defamation must be construed as per se or per quod without reference to anything except the words used. See Budd v. J.Y. Gooch Co., 1946, 157 Fla. 716, 27 So.2d 72, for an example. Except for differences wrought by statute and in form, the foregoing is the only meaningful difference remaining between libel and slander after the Florida cases departed from the view that slander per se was limited to words imputing criminal conduct.
Because the facts giving rise to the tort of defamation may be isolated with clarity, the court naturally has a prominent function in evaluating the pleading and proof to determine whether or not a cause is proper for submission to the jury. Where the court finds that a communication could not possibly have a defamatory or harmful effect, the court is justified in either dismissing the complaint for failure to state a cause of action or in granting a directed verdict at the proof stage. See Diplomat Electric, Inc. v. Westinghouse Electric Supply Co., supra, Ross v. Gore, Fla. 1950, 48 So.2d 412, Cooper v. Miami Herald Publishing Co., 1947, 159 Fla. 296, 31 So.2d 382. In Diplomat Electric, Inc. v. Westinghouse Electric Supply Co., supra, the opinion indicated that if the court finds the language reasonably capable of two or more meanings one of which is defaming, the trier of fact should determine whether the language used was actually understood in its defamatory sense.
In the instant case, the defendant contends that the words attributed to him are not reasonably susceptible of the defamatory meaning contended for by the plaintiff. Undoubtedly this was the basis on which the trial judge dismissed the complaint, and it is with some diffidence that we take a variant position. We conclude, however, that from the language of the comment, it does not seem unreasonable to infer that persons hearing the same and possessed of a common mind might have taken it to mean that the plaintiff was a person with whom commercial relations were undesirable. Given this meaning, the comment attributes to the plaintiff a characteristic which is incompatible with the conduct of any lawful business. Hence the comment could come within one of the categories of slander per se recognized in Campbell v. Jacksonville Kennel Club and Teare v. Local Union No. 295, supra. Of course the communication might also have been intended to convey and perhaps did convey only innocuous meanings. Where, however, a communication is ambiguous *779 and is reasonably susceptible of a meaning which is defamatory, it is for the trier of fact to decide whether or not the communication was understood in the defamatory sense. Diplomat Electric, Inc. v. Westinghouse Electric Supply Co., 5 Cir.1967, 378 F.2d 377.
The defendant also contends that the comment does not sufficiently identify the plaintiff as its subject. This contention overlooks the allegations in paragraph 7 of the complaint to the effect that the plaintiff was expressly referred to in the context of the alleged remark and the allegations in paragraph 10 of the complaint to the effect that the remark did convey to the listeners a defamatory meaning with respect to the plaintiff. The defamed person need not be named in the defamatory words if the communication as a whole contains sufficient facts or references from which the injured person may be determined by the persons receiving the communication. O'Neal v. Tribune Company, Fla.App. 1965, 176 So.2d 535, 548; Harwood v. Bush, Fla.App. 1969, 223 So.2d 359. We conclude that the allegations in the complaint are sufficient as a matter of pleading to indicate that the plaintiff was intended to be the subject of the defendant's remarks and was understood to be such by the listeners.
No contention is made in the brief of either party that this court is or the lower court was faced with questions involving the existence or application of any theory of privilege. We concur in the implicit view of the parties that we need not at this point be concerned with questions of privilege. Privilege is a matter of affirmative defense or avoidance and should be raised by the answer where it does not clearly appear from the averments of the complaint. See Richard v. Gray, supra, and O'Neal v. Tribune Company, supra.
The judgment is reversed and the cause is remanded for further proceedings.
Reversed and remanded.
WALDEN and OWEN, JJ., concur.